IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL THOMAS, | : | CIVIL ACTION NO. **3:CV-11-2172** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN PALAKOVICH, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On November 21, 2011, Plaintiff, Daryl Thomas, currently an inmate at the State Correctional Institution, Fayette, LaBelle, Pennsylvania ("SCI-Fayette"), filed a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff was formerly confined at the York County Prison ("YCP") and at SCI-Camp Hill.[1]  Plaintiff raises Eighth Amendment denial of proper medical care claims against staff at both YCP and SCI-Camp Hill as well as due process claims under the Fifth and

---

[1]Plaintiff states that he was confined in YCP on March 30, 2009, and that he was then transferred from YCP to SCI-Camp Hill Intake Center on  April 16, 2009. (Doc. 1, pp. 2-3). Plaintiff also states that on May 13, 2009, he was transferred back to YCP because the PA DOC at SCI-Camp Hill did not want to treat his medical condition. (*Id.*, p. 4). On August 25, 2009, Plaintiff states that he was again transferred back to  SCI-Camp Hill Reception Center. (*Id.*, p. 7). The Records Department at SCI-Fayette indicates that Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette on November 3, 2009.

In his Complaint, on pages 6 and 8 Plaintiff incorrectly states that he was confined in YCP on "March 30, 2008," and on page 7 he incorrectly states that he was transferred from YCP to SCI-Camp Hill Intake Center on "April 16, 2008." (Doc. 1, pp. 6-7). The remaining pages of Plaintiff's Complaint, along with his exhibits, clearly show that the correct stated dates were in the year 2009, and not 2008.  In any event, since Plaintiff's claims accrued from March 30, 2009 through August 25, 2009, we find that they are time barred.  Also, Plaintiff appears to admit in his Complaint that he did not fully exhaust his present claims *via* the grievance procedures available at YCP and SCI-Camp Hill.

Fourteenth Amendments.   Plaintiff also raises state law claims of negligence and medical malpractice.  Plaintiff attached several exhibits to his Complaint.

Also, on November 21, 2011, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 2).

Jurisdiction of this Court over Plaintiff's civil rights action is pursuant to 28 U.S.C. §1331 and §1343.  Also, Plaintiff seeks the Court to exercise its pendent jurisdiction over his state law claims pursuant to 28 U.S.C. §1367.[2]  Plaintiff names the following five (5) Defendants in his Complaint: John Palakovich, Superintendent at SCI-Camp Hill; Mary Sabol, Warded at YCP; Dr. Vonkiel; Counselor Meghann C. Centeno; and Dr. Nicholas Schaff, Chief of Clinical Service, Pennsylvania Department of Corrections ("DOC").  (Doc. 1, pp. 1-2).

## II.  Allegations of Complaint.

As noted, Plaintiff states that he was confined in YCP on March 30, 2009, and that he was then transferred from YCP  to SCI-Camp Hill Intake Center on  April 16, 2009.  (Doc. 1, pp. 2-3). Plaintiff also states that on May 13, 2009, he was transferred back to YCP because the PA DOC at SCI-Camp Hill did not want to treat his medical condition.  (*Id*., p. 4).  On August 25, 2009, Plaintiff states that he was again transferred back to SCI-Camp Hill Reception Center.  (*Id*., p. 7).  The SCI-Fayette Records Department indicates that Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette on  November 3, 2009.  Plaintiff is presently confined at SCI-Fayette.

---

[2]To the extent Plaintiff raises professional medical malpractice claims under Pennsylvania law against the medical staff at YCP and SCI-Camp Hill, as discussed below, they are subject to dismissal due to Plaintiff's failure to timely file a Certificate of Merit ("COM") under Pa.R.Civ.P. 1042.7.

Plaintiff avers that he had a serious medical condition called "Bechets Syndrome."[3]  Plaintiff basically alleges that during his above stated periods of confinement in YCP and SCI-Camp Hill in 2009, prison medical staff at both prisons failed to provide him with proper medical care for his condition in violation of the Eighth Amendment.  Plaintiff also alleges that medical staff at both prisons were negligent under Pennsylvania law.  Plaintiff alleges that upon his arrival at YCP on March 30, 2009, he provided medical staff with medical records and information about his Behcet's Syndrome condition, and that medical staff, including the prison doctor, told him they never heard of it.  Plaintiff states that on April 1, 2009, he saw a physician aide at YCP, he provided medical information on Behcet's Syndrome, and that the medical treatment was not available.  Plaintiff states that he was offered Prednisone for his condition but that due to the number of flare ups he had, Prednisone was not a safe option.  (Doc. 1, p. 2).  Plaintiff further avers that he was seen by the medical staff at YCP on April 6, 8, 10 and 13, 2009.  Plaintiff alleges that the YCP medical staff

---

[3]Plaintiff refers to his ailment as "Bechets Syndrome."  Our search of WebMD, www.webmd.com, reveals that the correct spelling is "Behcet's" Syndrome.  We shall use the correct spelling of the syndrome hereafter.

According to WebMD, Behcet's Syndrome is:

> A rare multisystem inflammatory disorder characterized by ulcers affecting the mouth and genitals, various skin lesions, and abnormalities affecting the eyes. Symptoms include areas of abnormal mucous membrane changes (lesions) of the mouth and genitals that tend to disappear and recur spontaneously. Inflammation of the eyes (anterior uveitis, posterior uveitis, or panuveitis) also affects individuals with Behcet's syndrome. Additional systems of the body may also be affected including the joints, blood vessels, central nervous system, and/or digestive tract. The exact cause of Behcet's syndrome is unknown.

failed to contact his outside treating doctor about his condition and that they failed to review his medical records from his outside doctor.  On April 10, 2009, Plaintiff was seen by the YCP doctor. Plaintiff avers that the doctor told him that other than prescribing Prednisone there was not much that could be done to treat him.  (*Id*.,p. 3).  Plaintiff avers that when he had a fever and his ulcer got worse on April 13, 2009, he was seen by the prison nurse who gave him ibuprofen and Benadryl.

On April 16, 2009, Plaintiff was transferred from YCP to SCI-Camp Hill.  Plaintiff avers that he advised the medical staff at SCI-Camp Hill about his condition, and that he gave them records and information about Behcet's Syndrome.  Plaintiff alleges that the prison dentist treated him on April 17 and 18, 2009, for oral ulcers, and that the cortisone ordered did not work.  Plaintiff avers that also complained about hearing loss and vision problems in both eyes and that nothing was done by SCI-Camp Hill medical staff. (*Id*.).

Plaintiff avers that he was again treated by SCI-Camp Hill medical staff on April 22 and 23, 2009, and that he was denied proper medical care since none of the medications and treatment provided him worked.  Plaintiff also states that even though he was not able to eat solid food, he was not placed on a liquid diet.  Plaintiff states that on April 23, 2009, he passed out, was taken to the infirmary, and that he was put on 20 mg of Prednisone for 30 days and Vicoden for pain even though he was never on Prednisone for this long. (*Id*., p. 4).

On May 13, 2009, Plaintiff was transferred back to YCP since he states that SCI-Camp Hill did not want to treat him.  Plaintiff states that he notified the admission medical staff at YCP about his serious and terminal condition since he was having a flare up.  (*Id*.).  Plaintiff was seen by a YCP

4

nurse on May 25, 2009, for swelling and a rash.  Plaintiff was prescribed hydrocortisone cream for his rash.  Plaintiff states that nothing was given to him for his ulcers and his pain since staff did not know how to treat them.  Plaintiff states that he gave the YCP medical staff information about how to treat his serious condition and that they were negligent in failing to treat him properly in accordance with the information he gave them.

Plaintiff was again treated on June 4, 2009, by the YCP nurse for open wounds and he was prescribed betamethsone.  Plaintiff states that the nurse failed to examine him for his other symptoms such as loss of hearing and vision, and his ulcer.  (*Id.*, p. 4).  Plaintiff also avers that YCP only wanted to give him Prednisone for his Behcet's Syndrome even though "it pose[d] a great risk to continue to prescribe it."  (*Id.*).

Plaintiff states that when he was transferred back to SCI-Camp Hill on August 25, 2009, he again got sick due to the lack of medical care, despite the fact that  Defendant Dr. Scharff was aware of his condition from his prior confinement in this prison.  (*Id.*, p. 7).  Plaintiff also avers that the SCI-Camp Hill medical staff refused to give him proper medical care for his serious medical needs.

Plaintiff summarizes his claims as follows:

> The York County Medical Department along with the Pennsylvania Department of Correction Reception Center Camp Hill refusal to perform Rheumatology Clinical visit and blood work monitoring, along with starting plaintiff on the drug Azathioprine, with follow up visits to Rheumatology every one (1)-to-three (3) months.  Without these (sic) treatment to evaluate plaintiff Becket's (sic) Disease symptom which is causing the plaintiff pain and suffering, each day that goes by the plaintiff's pain and, suffering has gotten worse, because of the negligent (sic) of both the York County Prison Medical Department, and the Pennsylvania Department of Correction[s] Reception Center at Camp Hill refusal to treat plaintiff serious medical condition.

(*Id.*, ¶ 31).

As stated, Plaintiff raises Eighth Amendment denial of proper medical care claims against staff at both YCP and SCI-Camp Hill, as well as due process claims under the Fifth and Fourteenth Amendments.[4]  Plaintiff also raises state law claims of negligence and medical malpractice.

In his First Cause of Action, Plaintiff alleged that Defendant Warden Palakovich violated his Eighth Amendment rights by failing to "curb the know[n] pattern of medical denial by the [SCI-]Camp Hill medical staff." (*Id.*,p. 7).  Plaintiff also avers that since he was transferred to SCI-Camp Hill, namely on April 16, 2009 and on August 25, 2009, this shows the direct involvement of Defendant Palakovich with respect to his Eighth Amendment claims.

In his Second Cause of Action, Plaintiff alleges that Defendant YCP Warden Sabol  violated his Eighth Amendment rights by failing to "curb the know[n] pattern of the York County medical staffs personnel." (*Id.*,p. 8).  Plaintiff states that Defendant Sabol was aware of his serious medical conditions since he wrote her letters in April 2009.  (*Id.*).

In his Third Cause of Action, Plaintiff avers that Defendant Dr. Vonkiel violated his Eighth Amendment rights by refusing to provided him with proper medical care for his Behcet's Disease

---

[4]To the extent that Plaintiff is raising claims under Fifth Amendment against the state actor Defendants, we will recommend that these claims against Defendants be dismissed with prejudice.  *See Leventry v. Watts,* 2007 WL 1469038, *2 (W.D. Pa. 5-17-07).  In *Leventry*, the Court stated that "the Fifth Amendment restricts the actions of federal officials, not state actors." Id.(citations omitted).  As in *Leventry,* our Defendants are state actors.  Thus, Plaintiff's claims against Defendants under the Fifth Amendment should be dismissed with prejudice.  *Id.*; *Goins v. Beard*, 2011 WL 4345874, *8 (W.D. Pa. 9-15-11).

Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint against Defendants regarding his claims under Fifth Amendment, since we find it would be futile.  *See Leventry*, *supra*.; *Goins, supra*.

even though this Defendant knew of his disease before he treated Plaintiff on April 10, 2009, due to the fact that all of his records from his outside treating doctor were sent to YCP medical department on March 30, 2009. (*Id*., p. 8).

In his Fourth Cause of Action, Plaintiff alleges that Defendant Counselor Centeno violated his due process rights under the Fifth Amendment and Fourteenth Amendment since she failed to fully investigate his DOC 801 administrative grievances and provide an adequate response.

In his final claim, Fifth Cause of Action, Plaintiff alleges that Defendant Dr. Schaff violated his Eighth Amendment rights by failing to properly treat him for his serious conditions. Plaintiff states that before his two transfers to SCI-Camp Hill, Defendant Dr. Schaff had copies of his medical records from his outside treating doctor (Dr. Khan) and his prescribed treatment, and that despite this actual knowledge Dr. Schaff refused and denied to treat him properly. (*Id*., p. 9). Plaintiff also states that Dr. Schaff did not order the required long term monitoring of his lab work for the medication Dr. Kahn prescribed, namely azathiloprine.

As relief, Plaintiff requests a declaratory judgment that Defendants Palakovich and Schaff violated his constitutional rights, as well as injunctive relief "ordering defendant John Palakovich, Warden of Camp Hill Reception Center and Mary Sabol, Warden of York County Prison, or their agent to immediately arrange for the plaintiff to begin the following treatment baseline law studies including CBC, sedimentation rate, C-reactive routine quantitative, LFTs." (*Id*., p. 10). Since Plaintiff is no longer at either YCP or SCI-Camp hill, we find that his request for injunctive relief seeking specific medical care at these two prisons is moot and should be dismissed. *See Kelly v. Lebanon County Com'rs*, 2011 WL 4345065, *3-*4 (M.D. Pa. 8-23-11), adopted by 2011 WL

4344609 (M.D. Pa. 9-15-11)(citing, in part, *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).

Plaintiff is clearly no longer confined at YCP or SCI-Camp Hill.  He is currently confined at SCI-Fayette.  Nor does Plaintiff allege that it is likely he will be returned to either YCP or SCI-Camp Hill.

Plaintiff's transfer from YCP and SCI-Camp Hill renders his claim for injunctive relief as moot, and as such, it should be dismissed.

Plaintiff also requests compensatory and punitive damages against Defendants.  Plaintiff sues the state actor Defendants in both their official and individual capacities.  (*Id.*, pp. 7-10).   Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[5]

We now screen Plaintiff's pleading (Doc. 1) as we are obliged to do.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).[6]

---

[5]As stated, Plaintiff indicates that he seeks money damages from each named Defendant in both their individual and official capacities.  To the extent that he seeks monetary damages from the Defendants, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).  Thus, we will recommend that all of Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.  We find futility in allowing Plaintiff to amend his claims for monetary damages against Defendants in their official capacities.  If a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility.  *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

[6]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

### III.  PLRA.

As stated, Plaintiff filed an *in forma pauperis* motion.  (Doc. 2).  The Prison Litigation Reform Act of 1995[7] obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[8]  Specifically, Section 1915(e)(2), which was created by §805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

A Complaint is frivolous "where it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court uses the same standard of review to screen  a Complaint under the PLRA as a Rule 12(b)(6) motion.  *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 110 (3d Cir. 2002); *Sharpe v. Costello*, 2007 WL 1098964, *3 (M.D. Pa. 2007); *O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

### IV.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and

---

[7]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[8]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The Court then issued an administrative order directing the warden to commence deduction of the full filing fee from the Plaintiff's prison trust fund account.  (Docs. 2, 5 and 6).

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[9]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

---

[9]Plaintiff alleges in his pleading that the five Defendants are employees of York County and  the PA DOC. This is sufficient to show that Defendants are state agents.

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra.*

As stated, the Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## V.  Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010),  the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

The Court can consider the exhibits submitted by Plaintiff.  The Court in *White v.*

*Probation Office,* 2008 WL 3837045, *1, n. 3 (M.D. Pa.), noted:

> "[t]he court may consider documents of record and exhibits submitted
> by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames
> Home Loan,* 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v.
> Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384-85 n. 2
> (3d Cir.1994)) (observing that a court may consider exhibits submitted
> by the parties when ruling on a motion to dismiss)."

*See also Kuniskas v. Walsh,* 2010 WL 1390870, *3 (M.D. Pa.).[10]

## VI.  Discussion.

Plaintiff's exhibits indicate that on March 2, 2009, he was sentenced in the York County

Court of Common Pleas to a period of confinement for statutory sexual assault and related offenses

to 1 ½ to 3 years in a state correctional institution.  (Doc. 1, Ex. A).  On August 17, 2009, Plaintiff

---

[10]See also  *Reisinger v. Luzerne County,* 2010 WL 1976821, *7 (M.D. Pa.).
Thus, we will consider Plaintiff 's Exhibits attached to his Complaint.

filed a Petition to Modify his sentence with the York County Court under 61 P.S. § 81 due to his serious medical illness or for removal from prison and transfer to a medical facility. Plaintiff stated in his Petition that his treating doctor Dr. Kahn assessed him on July 6, 2009, and opined that he had to remain on steroids, *i.e* Prednisone, to keep his oral ulcers under control, and that he needed steroid sparing agent. Dr. Kahn ordered that Plaintiff receive as treatment pneumonia vaccination, a chest x-ray and then be started on anathioprine at 50 mg per day. Dr. Kahn also opined that Plaintiff should be given baseline lab studies that needed to be repeated once a week to monitor azathiprine toxicity. Plaintiff's Petition indicates that Dr. Kahn personally communicated with Dr. Von Kiel the doctor at YCP with respect to Plaintiff's condition and his required treatment.

In his instant Complaint, Plaintiff basically alleges that Defendants violated his Eighth Amendment rights and were negligent for failing to follow the course of treatment recommended by Dr. Kahn, his outside treating physician, and for failing to order the monitoring of his labs as Dr. Kahn directed. As indicated above, Plaintiff's claims span the time period from March 30, 2009 through August 25, 2009.

1. *Statute of Limitations*

Since Plaintiff filed his Complaint on November 21, 2011, we find that all of Plaintiff's stated constitutional and state law negligence claims which pre-date November 21, 2009, are time barred by the applicable two-year statute of limitations. We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's claims which pre-date November 21, 2009  since his allegations and his exhibits make clear that these claims are time

barred.  Plaintiff was clearly aware of his instant claims at the time that they arose or he could have reasonably discovered these claims when they arose.  In fact, Plaintiff's detailed allegations, as well as his exhibits, reveal that he was well aware of the stated claims when they arose.

There is a 2-year statute of limitations with respect to a §1983 civil rights action.  The law is clear that §1983 claims are subject to a two-year statute of limitations.  See *Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6 affirmed 146 Fed.Appx. 558 (3d Cir. 2005); *Beattie*, 2009 WL 533051, * 8.  Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury.  *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994); *Beattie, supra*.  It is abundantly clear in the present case, and readily apparent from Plaintiff's lengthy and very detailed allegations, as well as his exhibits, that he discovered, or should have discovered, all of his constitutional claims at the time they arose.  Further, Plaintiff does not assert any basis to toll the statute of limitations with respect to his claims.

As mentioned, it is quite apparent from the face of Plaintiff's Complaint that he has not commenced his § 1983 action within the applicable two-year statute of limitations.  We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his pleading is clear that he did not timely file his constitutional claims.  *See Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order); *Jones v. Lorady*, Civil No. 11-0666, M.D. Pa. (June 17, 2011 Order).

Also, under Pennsylvania law, there is a 2-year statute of limitations with respect to negligence claims.  *See Metso Paper USA, Inc., v Bostik, Inc.,* 2011 WL 2670320, * 3 (M.D. Pa. 7-8-11).  Thus, Plaintiff's state law negligence claims he reaises in this case are also time-barred and should be dismissed with prejudice.

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

McPherson argues that the District Court's dismissal of his complaint as time-barred was wrong on both procedural and substantive grounds.  As a procedural matter, McPherson contends that *sua sponte* dismissal on statute of limitations grounds is inconsistent with our holding in *Ray v. Kertes,* 285 F.3d 287 (3d Cir.2002).  On substantive grounds, McPherson contends, without substantiation, that equitable tolling may allow him to pursue this action long after the limitations period otherwise expired.

*Ray* concerned a provision of the Prison Litigation Reform Act ("PLRA") that states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While recognizing that the statute clearly requires plaintiffs to exhaust their administrative remedies, we rejected a pleading rule that would have required a complaint to allege facts demonstrating exhaustion. Rather, we held that "failure to exhaust is an affirmative defense to be pleaded by the defendant." *Ray,* 285 F.3d at 295.

We also found that the court below erred in *sua sponte* dismissing a complaint that did not demonstrate that the plaintiff exhausted administrative remedies. *Id.* We relied primarily on the text of § 1997e, which provides for *sua sponte* dismissal if a complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *Ray,* 285 F.3d at 296 (citing 42 U.S.C. § 1997e(c)(1)).  We also noted that the statute explicitly allows a court to dismiss a complaint without first requiring the exhaustion of administrative remedies." *Id.* (citing 42 U.S.C. § 1997e(c)(2)).  We concluded, under the principle of *expressio unius est exclusio alterius,* that the omission of "failure to exhaust" from the grounds for sua *sponte* dismissal indicated Congressional intent not to include failure to exhaust as a reason justifying dismissal. *Id.*

McPherson argues that *Ray* stands for the general proposition that a court may not *sua sponte* dismiss a complaint on the basis of *any* affirmative defense, including the statute of limitations.  To be sure, a limitations defense is an affirmative defense. *See Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002). *Ray,* however, does not go as far as McPherson claims.  This Court has long recognized that the statute of limitations can serve as the basis for dismissal under Fed.R.Civ.P. 12(b)(6), as long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978) (internal quotation marks omitted). **This principle is consistent with our observation in *Ray* that, "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." *Ray,* 285 F.3d at 297. Ray's failure to exhaust was not apparent from the face of his complaint, so *sua sponte* dismissal was not appropriate.**

The fact that a claim has not been brought within the statue of limitations, however, may be apparent from the face of a complaint.  The United States Supreme Court, while agreeing that failure to exhaust under the PLRA is an affirmative defense and that plaintiffs need not demonstrate exhaustion in their Complaints to survive dismissal, nonetheless recognized that a court may dismiss a complaint for failing to state a claim when its allegations show that the complaint is not timely.  The Court noted that "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to make a claim; that does not make the statute of limitations any less an affirmative defense." *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The factual allegations in the complaint, not the label of "affirmative defense," control the court's decision whether to dismiss the suit. "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Id.*

Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses.  But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint.  We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely.   Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent

16

> from the face of the complaint, a court may sua sponte dismiss the complaint
> pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

(Emphasis added).

Thus, based on *McPherson* and *Burnett,* even though the statute of limitations is an affirmative defense, *sua sponte* dismissal of all Plaintiff's pre-November 21, 2009 claims by this Court is nonetheless proper since it is abundantly clear from the face of his Complaint, as well as his exhibits, that these claims are time barred.  In fact, we find that all of Plaintiff's constitutional claims occurred pre-November 21, 2009.  Therefore, we will recommend that all of Plaintiff's pre-November 21, 2009 claims be dismissed with prejudice as time barred.  Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint against all Defendants with respect to his pre-November 21, 2009 claims, since we find it would be futile.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002).  Thus, if a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility.  *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

   2.  *Failure to Exhaust Administrative Remedies*

As mentioned, it is also apparent from the face of Plaintiff's Complaint that he has not yet fully exhausted all of his YCP and DOC administrative remedies before he filed this action, as required. (Doc. 1, p. 5, ¶ 25).  We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his pleading is clear that he did not exhaust his administrative remedies regarding his claims before he filed his action.  *See McPherson, supra;*

17

*Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order); *Jones v. Lorady*, Civil No. 11-0666, M.D. Pa. (June 17, 2011 Order). Plaintiff incorrectly states that "a prison seeking money damages need not exhaust remedies." Plaintiff also incorrectly states that "[e]xhaustion is not required where it is futile, or no remedy is available." (*Id*.). We take judicial notice that both the DOC and YCP have administrative remedy procedures available.

Thus, based on *McPherson, Lorady and Robinson*, even though exhaustion is an affirmative defense, *sua sponte* dismissal of Plaintiff's action by this Court is nonetheless proper since his failure to fully exhaust his YCP and DOC administrative remedies available to him[11] is abundantly clear from the face of his Complaint. In *Ray*, unlike the present case, the inmate's failure to exhaust was not apparent from the face of his Complaint. *Id*., at *3.

Initially, the issue of whether Plaintiff fully exhausted all of his DCP administrative remedies which were available to him is a question of law for the Court to decide. *See Drippe v. Tobelinski*, 604 F. 3d 778, 782 (3d Cir. 2010)("exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge")(citation omitted).

In *Womack v. Smith*, 310 Fed. Appx. 547, 550 (3d Cir. 2009), the Court stated:

> The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). "[P]rison grievance

---

[11]Thus, an inmate must complete all parts of the grievance process to establish that he has exhausted his administrative remedies. *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). Failure to complete any component of the administrative process will preclude an inmate's claim in federal court. *Id.*

procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231.

Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

The Third Circuit has stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies **prior to filing suit in federal court**." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted)(emphasis added).  The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id. See also Nyhuis v. Reno,* 204 F. 3d 65 (3d Cir. 2000).  Thus, Plaintiff's contention in his Complaint that exhaustion is not required where it is futile is not correct.

As the Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion
> of administrative remedies is required for all actions concerning
> prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a);
> *see Woodford v Ngo*, 126 S.Ct. 2378 (2006).  The "exhaustion
> requirement applies to all inmate suits about prison life, whether

19

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388.

The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id*. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The present Complaint reveals that Plaintiff has not yet completed exhaustion of his stated claims against Defendants. The law is clear that Plaintiff was required to exhaust his administrative remedies before he filed his instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, *3 (M.D. Pa.). The law is also clear that Plaintiff cannot complete exhaustion while his present action is pending with this Court. Rather, Plaintiff's instant case should be dismissed with prejudice since it is now too late to complete exhaustion with respect to his 2009 claims. The Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (not precedential). The *Oriakhi* Court found that the lower court had properly

dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim.   "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred."   *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003)).

Accordingly, we will recommend that Plaintiff's Complaint (Doc. 1) be dismissed with prejudice for failure to exhaust of his YCP and DOC administrative remedies.   We find futility of any amended pleading since it is now too late for Plaintiff to complete exhaustion of his March 2009 through August 2009 claims.   *See Alston, supra.*

3.  *Defendant Counselor Centeno*

Plaintiff alleges in his Fourth Cause of Action that Defendant Counselor Centeno at SCI-Camp Hill failed to fully investigate his DOC administrative grievances and to provide a proper response in violation of his due process rights under the Fifth Amendment and Fourteenth Amendment.   The only involvement of Defendant Centeno with Plaintiff's claims appears to be her responses to Plaintiff's administrative remedies. This is insufficient personal involvement.

It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977);   *See also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure).   It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir.

2005).  *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D.Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as DOC does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser, supra* (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.  *Burnside, supra.  See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted).

Plaintiff does not allege in his Complaint any actual personal involvement of Defendant Centeno with respect to his constitutional claims.  Additionally, as stated, Plaintiff seemingly alleges that the only personal involvement of Defendant Centeno was in failing to fully investigate and failing to properly respond to his administrative remedy requests.  Plaintiff has failed to sufficiently state any personal involvement of Defendant Centeno.  Nor does Plaintiff allege that Defendant Centeno  was  personally involved in his medical care at SCI-Camp Hill and in  the decisions how to treat his Behcet's Disease.  We, therefore, will recommend that Defendant Centeno be

22

dismissed from this case with prejudice.

Based upon the above, we find that it would be futile to allow Plaintiff to amend his Complaint against Defendant Centeno since all of his constitutional claims are time barred. As discussed below, we find that it would be futile to allow Plaintiff to amend his constitutional claims as against the other Defendants as well. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it would be futile to do so. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111.

4. *Supervisory Defendants Superintendent Palakovich and Warden Sabol*

Plaintiff asserts Eighth Amendment claims for violation of his Eighth Amendment right to proper medical care against Defendants Superintendent Palakovich and Warden Sabol in his First and Second Causes of Action, respectively. We find that Plaintiff has named Defendants Superintendent Palakovich and Warden Sabol only based on *respondeat superior* which is not an acceptable basis to hold these Defendants liable in a civil rights action. *See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.). As discussed above, Plaintiff does not specifically state the personal involvement of Defendants Superintendent Palakovich and Warden Sabol with respect to any of his medical treatment at SCI-Camp Hill and YCP.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat*

23

> *superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).
> Rather, each named defendant must be shown, via the complaint's allegations,
> to have been personally involved in the events underlying a claim. *Iqbal,*
> *supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each
> Government-official defendant, through the official's own individual actions,
> has violated the Constitution.") "Personal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the
> 'personal involvement' requirement, a [§ 1983] complaint need only
> allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326
> F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.,* 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

In his  Complaint, Plaintiff is clearly attempting to assert his claims against Defendants Superintendent Palakovich and Warden Sabol  based only on *respondeat superior*.  (Doc. 1, pp. 7-8).   Further, Defendants Superintendent Palakovich and Warden Sabol are not sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's constitutional rights.   Nor are Defendants Defendants Superintendent Palakovich and Warden Sabol alleged to have directed the DOC Defendants to violate his rights.  *Id.*

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

> "To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to 'state a claim to relief that is plausible on
> its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009)
> [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.
> 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting
> to establish liability based on supervisory liability. *See Rode v. Dellarciprete,*
> 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely
> on the operation of respondeat superior, as a defendant must have

personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

In order to state an actionable claim under §1983, as indicated above, a plaintiff must allege that a person has deprived him of a constitutional right, and that the person who caused the deprivation acted under color of state law.  *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005); *Ayers*, 2009 WL 801867, *5; *Santiago, supra*.  Plaintiff has not alleged a causal connection between the direction by Defendants Superintendent Palakovich and Warden Sabol and the violation of his constitutional rights by the other Defendants.  *See Santiago, supra*.

Moreover, in his Complaint, Plaintiff repeatedly admits that he was receiving care from the medical staff at YCP and SCI-Camp Hill during the relevant time period of March 30, 2009 through

August 25, 2009. Also, in his Complaint, Plaintiff indicates that the medical staff at both prisons were deliberately indifferent to his serious Behcet's disease and related conditions. Defendants Superintendent Palakovich and Warden Sabol, non-physicians, cannot be found deliberately indifferent to the Plaintiff's serious medical needs for his stated conditions, as the Plaintiff readily acknowledges that he was under the care of the prison medical staff at both prison, and that the medical staff, including doctors and nurses, were aware of his conditions. *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993). *See also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("the United States Court of Appeals for the Third Circuit held in *Durmer* that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(Citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07).

Therefore, we will recommend that Plaintiff's Eighth Amendment claims for denial of proper medical care against Defendants Defendants Superintendent Palakovich and Warden Sabol be dismissed with prejudice. Based upon the above, including the expiration of the statute of limitations and the failure to exhaust his claims, we find that it would be futile to allow Plaintiff to amend his Complaint against Defendants Superintendent Palakovich and Warden Sabol with respect to his Eighth Amendment claims for denial of proper medical care. *See Alston, supra*.

5. *No COM for Professional Medical Malpractice Claims*

Initially, with respect to Medical Defendants, namely, Dr. Vonkiel at YCP and Dr. Schaff at SCI-Camp Hill, to the extent Plaintiff is deemed as seeking to sue these medical staff Defendants for negligence under Pennsylvania law with respect to his medical care for his Behcet's Disease and related conditions and is seeking to raise medical malpractice claims against them, he cannot do so in a § 1983 civil rights action. *See Bailey v. Palakovich*, 2007 WL 1450698, *5 (M.D. Pa.).

Additionally, to the extent Plaintiff is seeking to file a medical malpractice action under state law against Defendants Dr. Vonkiel and Dr. Schaff in this case, he was required to file a Certificate of Merit ("COM") under Pennsylvania law pursuant to Pa.R.C.P. 1042.3(a)(1). A COM is required for a Pennsylvania professional negligence claim raised in a malpractice action. *See Santee v. U.S.*, Civil Action No. 3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.), 2008 WL 4426060 (M.D. Pa.). "The COM requirement is set forth in a procedural rule, but federal courts exercising diversity and supplemental jurisdiction have considered it substantive law that must be applied to claims under Pennsylvania law presented in federal court." *Booker v. U.S.*, 2009 WL 90129, *3 (citations omitted). The Third Circuit affirmed a case in the Middle District of Pennsylvania in which the District Court found that PA Rule 1042.3 is a rule of substantive state law and that Plaintiffs in federal court must comply with this rule. *See Perez v. Griffin*, 2008 WL 2383072 (M.D. Pa.), aff'd. 2008 WL 5351829 (3d Cir. 12-23-08); *Hodge v U.S. DOJ*, 372 Fed. Appx. 264, 267 (3d Cir. 2010) (A COM is required to state a medical negligence claim in federal court).

There is no record that Plaintiff Thomas ever filed a COM in this case. Also, Plaintiff's

negligence claims and professional medical malpractice claims against Defendants Dr. Vonkiel and Dr. Schaff are time barred under Pennsylvania law.

Thus, we will recommend that any Pennsylvania state law negligence claims and professional medical malpractice claims Plaintiff is deemed as raising against Defendants Dr. Vonkiel at YCP and Dr. Schaff at SCI-Camp Hill be dismissed with prejudice.   We find futility in allowing Plaintiff to amend his pleading with respect to his negligence claims and professional medical malpractice claims against Defendants Dr. Vonkiel and Dr. Schaff since no COM was filed and they are time barred under Pennsylvania law.  *See Alston, supra*.

Plaintiff has also raised Eighth Amendment claims against Defendants Dr. Vonkiel and Dr. Schaff.

In *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.), the Court stated that:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Also, as the Court stated in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551

28

F.2d 44, 48 (4th Cir.1977)).  When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988).

Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean,* 897 F.2d 103, 108-10 (3d Cir.1990).

We find that, while Plaintiff has stated cognizable Eighth Amendment denial of proper medical care claims as against the Medical Defendants, namely, Dr. Vonkiel and Dr. Schaff, they should be dismissed with prejudice since they are time barred and since Plaintiff failed to exhaust his claims.

In *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191,

193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

Applying these principles to the above detailed allegations Plaintiff asserts against the stated two Medical Defendants, we find that viable Eighth Amendment claims are stated against them. Further, we find that Plaintiff alleges his Behcet's Disease and related conditions were serious conditions.  As stated, Plaintiff admits that he received repeated medical care for his disease and conditions at both YCP and SCI-Camp Hill during the relevant time period from March 30, 2009 through August 25, 2009, and he alleges he was refused and denied proper treatment despite the fact that his outside treating doctor, Dr. Kahn, gave  the prison doctors copies of his records and treatments.  In *Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.), the Court stated:

> In order to state a claim under the Eighth Amendment for denial of medical care, Mimms must show that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer,* 511 U.S. at 834-35 Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104-05.

Moreover, while we find that many of Plaintiff's allegations against Defendants Dr. Vonkiel and Dr. Schaff amount to only negligence, we also find that Plaintiff's allegations rise to Eighth Amendment claims.

In any event, based on *McPherson* and *Robinson*, we will recommend that Defendants Dr. Vonkiel and Dr. Schaff be dismissed with prejudice from this action since Plaintiff's constitutional claims against them are time barred and since Plaintiff failed to exhaust his claims.

Accordingly, we will recommend that Plaintiff Thomas's Complaint (Doc. 1) be dismissed with prejudice.

## VII.  Recommendation.

Based on the above, it is respectfully recommended that Plaintiff Thomas's entire Complaint **(Doc. 1)** be dismissed with prejudice since his claims are time barred and since he failed to exhaust his claims.[12]  It is also recommended that Plaintiff's *in forma pauperis* Motion **(Doc. 2)** be granted solely for the purpose of filing this action, and that his case be closed.




                                        s/ Thomas M. Blewitt
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: February 7, 2012**

---

[12]Pursuant to our above discussion, we find futility of any amendment of Plaintiff Thomas' claims against Defendants since they are time barred and since he failed to exhaust his claims, and we shall not recommend Plaintiff be granted leave to amend his pleading with respect to any of his claims.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL THOMAS, | : | CIVIL ACTION NO. **3:CV-11-2172** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN PALAKOVICH, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 7, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                    s/ Thomas M. Blewitt
                                    THOMAS M. BLEWITT
                                    United States Magistrate Judge


**Dated: February 7, 2012**