# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYL THOMAS, | |
| Plaintiff, | CIVIL ACTION NO. 3:11-CV-2172 |
| v. | (JUDGE CAPUTO) |
| JOHN PALAKOVICH, WARDEN OF CAMP HILL PRISON; MARY SABOL, WARDEN OF YORK COUNTY PRISON; DOCTOR VONKIEL; MEGHANN C. CENTENO, COUNSELOR ; DOCTOR NICHOLAS SCHAFF, CHIEF OF CLINICAL SERVICE PENNSYLVANIA DEPARTMENT OF CORRECTIONS; | (MAGISTRATE JUDGE BLEWITT) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are Magistrate Judge Blewitt's Report and Recommendation ("R & R") and Plaintiff Daryl Thomas's Objections. Magistrate Judge Blewitt reviewed Mr. Thomas's complaint and recommended that it be dismissed with prejudice. The R & R will be rejected in part because the face of the complaint does not demonstrate that Mr. Thomas's claims are untimely or that he failed to exhaust. But the R & R will be adopted in part because: (1) Mr. Thomas failed to state Fifth or Fourteenth Amendment claims, medical malpractice claims, and Eighth Amendment claims against Defendant Wardens John Palakovich and Mary Sabol; (2) Mr. Thomas's claim for injunctive relief is moot; and (3) state officials cannot be sued for monetary damages. Magistrate Judge Blewitt also recommended that the Court grant Mr. Thomas's Motion for Leave to Proceed *In Forma Pauperis*; this recommendation will be adopted.

## I. Background

Plaintiff Daryl Thomas has been an inmate at the State Correctional Facility at Fayette ("SCI-Fayette") in LaBelle, Pennsylvania since November 3, 2009. Mr. Thomas's complaint stems out of his prior incarceration at both the York County Prison ("YCP") and the State Correctional Facility at Camp Hill ("SCI-Camp Hill"). The facts as alleged in Mr. Thomas's complaint are as follows.

Mr. Thomas suffers from a serious medical condition called Behcet's Syndrome. Behcet's is an autoimmune inflammatory condition that has manifested in Mr. Thomas's case in the form of extremely painful oral ulcers. Proper treatment of Behcet's involves medication called Azathioprine, frequent visits to a rheumatology clinic, and blood work monitoring. Prior to his incarceration, he was being treated by Dr. Sadia Khan.

Mr. Thomas was confined in YCP on March 30, 2009.[1] When he arrived at YCP, he provided medical staff with his medical records and information about his Bechet's Syndrome. The medical staff, including the prison doctor, told him they had never heard of Behcet's. On April 1, 2009, Mr. Thomas saw a physician's aide, but the aide did not offer him the medical treatment he needed. Instead, he offered only the steroid Prednisone, which was not a safe option for Mr. Thomas because of the frequency of his Behcet's flare-ups. On April 6, 2009, Mr. Thomas saw another physician's aide about an oral ulcer that had become a major problem. He received no treatment, even after signing an authorization form releasing his outside medical records to YCP's medical department. On April 8, 2009, he saw another physician's aide and signed another release form.

---

[1] The complaint incorrectly states that his incarceration began on March 30, 2008, but Mr. Thomas confirmed in his objections that this was an error.

Mr. Thomas did not meet with a doctor until April 10, 2009, when he met with Defendant Dr. Vonkiel. At that point, his lips were swelling and the pain from the ulcer was so severe that he could not eat. The doctor told Mr. Thomas that there was not much that could be done other than Prednisone. Mr. Thomas asked if Dr. Khan had approved the use of Prednisone, and the medical staff advised him that they had never contacted Dr. Khan. On April 13, 2009, Mr. Thomas began to run a fever and feel faint. The ulcer had gotten worse and he was unable to consume solid food. Mr. Thomas wrote letters to Defendant Mary Sabol, the Warden of YCP, advising her of his serious medical condition.

On April 16, 2009, Mr. Thomas was transferred to SCI-Camp Hill.[2] He explained to SCI-Camp Hill's medical admissions department about his Behcet's Syndrome and current symptoms. At that point, Mr. Thomas had a swollen face and his lips were starting to crack and bleed. Mr. Thomas saw the Camp Hill doctor, Defendant Dr. Nicholas Schaff, who said he thought that Mr. Thomas had gingivitis. Mr. Thomas explained that he had Behcet's and gave the doctor copies of his medical record and information describing the disease. Mr. Thomas saw a dentist on April 17, 2009, who said that in addition to the ulcers, it appeared he had developed a yeast infection in his mouth. The next day, the dentist gave him some cortisone ointment that did not help.

Mr. Thomas complained to the Camp Hill medical staff that he was having hearing loss and vision problems in both eyes, but they did nothing. On April 22, 2009, he told the medical staff that the medicine they had given him–Claritin for his rash and ibuprofen for pain–was not working. He was still unable to consume solid food, but they did not place him

---

[2] Again, the complaint incorrectly refers to 2008 instead of 2009, but Mr. Thomas states this was an error.

on a liquid diet. On April 23, 2009, Mr. Thomas passed out and had a seizure. He was taken to the infirmary, where they gave him Prednisone, Vicodin for his pain, and a liquid to control the infection. They wanted him to stay on the Prednisone for thirty days, although it was ill-advised for him to take it and he had never before taken it for that long.

On May 13, 2009, Mr. Thomas returned to YCP because Camp Hill did not want to treat him. He again notified the admissions staff of his illness because he was having a flare-up. Mr. Thomas put in a medical sick call slip on May 24, 2009, because he had a severely painful rash and swollen feet. The next day, the nurse gave him anti-itch hydrocortisone cream, but no medication to treat his pain or his ulcer. On June 4, 2009, Mr. Thomas saw the nurse to have some open wounds bandaged. The nurse prescribed betamethsone, a steroid cream, but did not examine Mr. Thomas for any other symptoms, such as his ulcer and vision/hearing loss.

Mr. Thomas presented his complaints about his medical treatment through the prison administrative grievance system. Defendant Counselor Meghann Centeno of YCP failed to provide an adequate response to his complaints.

Mr. Thomas filed a complaint in the Middle District of Pennsylvania on November 21, 2011. His complaint asserts four causes of action: (1) an Eighth Amendment claim against Defendant John Palakovic, the Warden of SCI-Camp Hill; (2) an Eighth Amendment claim against Warden Sabol; (3) an Eighth Amendment claim against Dr. Vonkiel; (4) Fifth and Fourteenth Amendment claims against Ms. Centeno; and (5) an Eighth Amendment claim against Dr. Schaff. Mr. Thomas seeks a declaratory judgment that the Defendants violated his rights, an injunction requiring the Defendant wardens to arrange for him to receive proper medical treatment, and compensatory and punitive damages. Mr. Thomas also filed

a motion for leave to proceed *in forma pauperis* on November 21, 2011.

Magistrate Judge Blewitt reviewed Mr. Thomas's claim pursuant to 28 U.S.C. § 1915(e)(2), which provides that for proceedings in forma pauperis:

> [T]he court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal– (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

Magistrate Judge Blewitt filed his R & R on February 7, 2012, and Mr. Thomas responded with objections on February 23, 2012. The R & R is now ripe for disposition.

## II. Legal Standards

### A.    Objections to the Magistrate Judge's Report

Where objections to a magistrate judge's report are filed, a district court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify (in whole or in part) the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court

should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Although the standards of pleading are more liberal for *pro se* litigants like Mr. Thomas, "*pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim." *Ireland v. McDaniel*, No. 10-387, 2011 WL 860390, at *2 (W.D. Pa. Jan. 27, 2011) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996)).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## II. Discussion

### A. Statute of Limitations

Magistrate Judge Blewitt recommended that Mr. Thomas's complaint be dismissed as untimely. Generally, the statute of limitations is an affirmative defense that must be pled by a defendant in the answer to the complaint. *See* F.R.C.P. 12(b); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). But a complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the face of the complaint demonstrates that the complaint is untimely. *Id.* at 135. Although the Third Circuit Court of Appeals has not addressed the issue in a precedential opinion, it has held in unpublished opinions that *sua sponte* dismissal of a time-barred complaint is also appropriate when a district court reviews a complaint pursuant to § 1915(e)(2). *McPherson v. United States*, 392 Fed. App'x 938, 943 (3d Cir. 2010); *Webb v. Perkiomen Sch.*, 349 Fed. App'x 675, 676 (3d Cir. 2009); *accord Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 956 (4th

Cir. 1994) (en banc); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1994). Here, Mr. Thomas's § 1983 claims are subject to Pennsylvania's two-year statute of limitations for personal injury suits. *See Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Because the latest allegation in Mr. Thomas's complaint occurred on June 4, 2009, Magistrate Judge Blewitt determined that the statute of limitations on Mr. Thomas's claims lapsed expired he filed his complaint on November 11, 20011.

     Mr. Thomas's complaint, however, does not definitively demonstrate that his claims are untimely. The Third Circuit Court of Appeals, in non-precedential decisions, has noted that it may be appropriate to toll the statue of limitations during the period in which a prisoner pursues administrative remedies. *See, e.g.*, *Davila v. Sheriff's Dep't*, 413 Fed. App'x 498, 502 (3d Cir. 2011). Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust all administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a). Pennsylvania law, however, requires the tolling of statutes of limitation "[w]here the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition." 42 Pa. Cons. Stat. Ann. § 5535(b). Thus, several courts of appeals and district courts have concluded that state tolling statutes such Pennsylvania's require the tolling of limitations periods on civil rights claims while a prisoner complies with the PLRA and properly exhausts his remedies. *See, e.g.*, *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999); *Cooper v. Beard*, No. 06-0171, 2006 WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006). Here, because Mr. Thomas's complaint does not indicate how long he was involved in the administrative grievance process, it is possible that the tolling of the

8

statute of limitations during that process would make his claims timely. Because of that possibility, it is improper to *sua sponte* dismiss his complaint on these grounds. *See Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001) ("Because the statute of limitations may have been tolled on account of Leal's exhaustion of administrative remedies, it does not appear beyond a doubt from the complaint itself that Leal can prove no set of facts which would avoid a statute of limitations bar.") Therefore, the magistrate judge's recommendation to dismiss the complaint as time barred will be rejected.

**B. Administrative Exhaustion**

Magistrate Judge Blewitt also recommends that Mr. Thomas's complaint be dismissed for a failure to exhaust administrative remedies as required under § 1997e(a) of the PLRA. As noted above, the Third Circuit has stated that *sua sponte* dismissal of a complaint on statute of limitations grounds is appropriate under § 1915(e)(2). *McPherson v. United States*, 392 Fed. App'x at 943. Because failure to exhaust and the statute of limitations are both affirmative defenses that are "similar 'in the abstract,'" *id.*, the Third Circuit has stated that dismissal for failure to exhaust is proper during § 1915(e)(2) review if that failure is clear on the face of the complaint, *see, e.g.*, *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002); *Toney v. Bledsoe*, 427 Fed. App'x 74, 78 n.7 (3d Cir. 2011).

In this case, however, Mr. Thomas's complaint does not clearly demonstrate that he has failed to exhaust his administrative remedies. The complaint states that "[t]o the extent possible, all claims stated herein were first presented through the York County Prison grievance mechanism, and also the Pennsylvania State Prison grievance mechanism, or procedure available." Compl. ¶ 25. This statement is too vague to prove that Mr. Thomas

9

failed to exhaust. Magistrate Judge Blewitt based his dismissal on the complaint's statements that exhaustion is unnecessary where a prisoner seeks monetary damages or where exhaustion is futile. Though those statements misrepresent the law, they do not constitute an admission of failure to exhaust. Because it is inappropriate to *sua sponte* dismiss based on the mere inference that a prisoner failed to exhaust his administrative remedies, the magistrate judge's recommendation will be denied.

## C. Section 1983

Because the complaint cannot be dismissed as untimely or for a failure to exhaust, it is necessary to review the sufficiency of Mr. Thomas's claims under 42 U.S.C. § 1983. Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Here, Mr. Thomas asserts that state prison officials violated his rights under the Fifth, Fourteenth, and Eighth Amendments.

**1. Eighth Amendment**

Magistrate Judge Blewitt's recommendation that the Court dismiss the Eighth Amendment claims against Wardens Palakovich and Sabol will be adopted.[3] To establish individual liability in a § 1983 case, a plaintiff must show that the defendant had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Where a supervisor[4] did not directly participate in violating a plaintiff's rights, he may still be liable under § 1983 where he "directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A supervisor may also be liable under § 1983 "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). A supervisor cannot be held liable, however, on a theory of *respondeat superior*. *Rode*, 845 F.2d at 1207.

Mr. Thomas fails to establish sufficient personal involvement by either Defendant Warden. The complaint alleges that Warden Sabol was aware of Mr. Thomas's medical condition, but does not state that she was aware of any failure to treat him. As to Warden

---

[3] Magistrate Judge Blewitt determined that Mr. Thomas properly stated Eighth Amendment claims against Dr. Vonkiel and Dr. Schaff. Mr. Thomas did not object to this recommendation, and Magistrate Judge Blewitt's reasoning was sound, so Mr. Thomas may proceed on these claims.

[4] Based on the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) (internal citations omitted). For the purposes of this opinion, however, the continued validity of imposing liability on a supervisor will be assumed.

Palakovich, the complaint does not contain any allegations specific to him. Therefore, the claims against these two Defendants will be dismissed. Mr. Thomas will, however, be granted leave to amend his complaint to properly state a claim against them. *See Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1995) ("[W]hen an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can.").

### 3. Fifth Amendment

Magistrate Judge Blewitt's recommendation that Mr. Thomas's Fifth Amendment claims be dismissed with prejudice will be adopted. The Due Process Clause of the Fifth Amendment applies to actions of the federal government, while the Due Process Clause of the Fourteenth Amendment applies to state actors. *See* U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; *see also B&G Const. Co., Inc. v. Dir. Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). Because Mr. Thomas does not allege any actions on the part of the federal government, he cannot assert claims under the Fifth Amendment.

### 4. Fourteenth Amendment

Magistrate Judge Blewitt's recommendation that the Court dismiss the Fourteenth Amendment claim against Ms. Centeno will be adopted. This claim stems out of Ms. Centeno's alleged failure to properly investigate and respond to Mr. Thomas's administrative grievances. However, the Third Circuit has stated in non-precedential opinions that there is no constitutionally protected right to a grievance procedure. *Burnside v. Moser,* 138 Fed. App'x 414, 416 (3d Cir. 2005) (citing *Flick v. Alba*, 932 F.2d 728, 729

(8th Cir. 1991)); *accord Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) ("I do not suggest that [inmate grievance] procedures are constitutionally mandated."). Although inmates do have a constitutional right to seek redress of their grievances from the government, that right is "the right of access to the courts, which is not compromised by the prison's refusal to entertain [an inmate's] grievance." *Flick*, 932 F.2d at 729. Thus, because the alleged actions of Ms. Centeno did not violate Mr. Thomas's constitutional rights, Mr. Thomas has failed to state a proper claim under § 1983 against Ms. Centeno.

**D. State Tort Claim**

Magistrate Judge Blewitt's recommendation that the state tort claims be dismissed for failure to file a Certificate of Merit ("COM") will be adopted. The complaint states that the Defendants are liable "under torts of negligence" for their actions.[5] Because the complaint alleges negligence on the part of medical practitioners, Mr. Thomas's claim will be construed as a medical malpractice tort claim. Pennsylvania Rule of Civil Procedure 1042.3 states that "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard," a plaintiff must file a COM within sixty days of filing the complaint. "Failure to file either a certificate of merit under Rule 1042.3(a) or a motion for extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his or her failure to comply is justified by a 'reasonable excuse.'" *Id.* (citing *Womer v. Hiliker*, 908 A.2d 269, 279-80 (Pa. 2006)). Rule 1042.3 must be applied by federal district courts,

---

[5] Mere negligence, of course, is insufficient to state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Mr. Thomas may, however, plead both Eighth Amendment and negligence claims in the alternative. *See* Fed. R. Civ. P. 8(e)(2).

13

*Iwanejko v. Cohen & Grigsby, P.C.*, 249 Fed. App'x 938, 944 (3d Cir. 2007), and applies to both represented and *pro se* plaintiffs, *Perez v. Griffin*, No. 1:06-cv-1468, 2008 WL 2383072, at *3 (M.D. Pa. Jun. 9, 2008). More than sixty days have elapsed since Mr. Thomas filed his complaint, and there is no record that he filed a COM. He did not claim a reasonable excuse in his objections–in fact, he failed to object at all to the magistrate judge's recommendation of dismissal based on failure to file a COM. For these reasons, Mr. Thomas's state tort claim for medical malpractice must be dismissed.

**D. Remedies**

    **1. Monetary Damages**

Magistrate Judge Blewitt's recommendation that the Court dismiss the claims for monetary damages against Dr. Schaff in his official capacity will be adopted. A plaintiff may not obtain monetary damages against state officials in their official capacities because "it necessarily would be paid from the state treasury," and would thus violate the State's sovereign immunity under the Eleventh Amendment. *See Helfrich v. Commonwealth of Pa. Dep't of Military Affairs*, 660 F.2d 88, 90 (3d Cir. 1981); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that a suit against a state official is "no different from a suit against the State itself"). Based on this, Mr. Thomas's claim for monetary relief against Dr. Schaff in his official capacity must be dismissed. The monetary damages claim against Dr. Schaff in his individual capacity, however, may proceed. *See Helfrich*, 660 F.2d at 90.

    **2. Injunction**

Magistrate Judge Blewitt's recommendation that the Court dismiss Mr. Thomas's

request for injunctive relief will be adopted. "An inmate's transfer from the facility complained of generally moots [any] equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993)). Mr. Thomas seeks an injunction ordering the Defendants to arrange for proper treatment of his Behcet's Syndrome. Mr. Thomas, however, is no longer incarcerated at either YCP or SCI-Camp Hill. Thus, even though he alleges that he continues to suffer from Behcet's and improper medical treatment, his claim for an injunction against the Defendants is moot and must be dismissed. If Mr. Thomas has legal claims arising out of his current medical treatment, he must file suit against the proper parties at SCI-Fayette.

### E. *In Forma Pauperis*

Because he recommended dismissal of the entire complaint, Magistrate Judge Blewitt recommended the granting of Mr. Thomas's motion for leave to proceed *in forma pauperis* for purposes of filing only. But since Mr. Thomas will proceed on some of his claims, his motion for leave to file *in forma pauperis* must be considered in terms of his ongoing suit.

Mr. Thomas's motion for leave to proceed *in forma pauperis* will be granted. The decision whether to grant or deny *in forma pauperis* status rests with the sound discretion of the district courts. *United States v. Holiday*, 436 F.2d 1079, 1079-80 (3d Cir. 1971) (citing decisions from other circuits). Poverty sufficient to qualify does not require penniless destitution, *Ward v. Werner*, 61 F.R.D. 639, 640 (M.D. Pa. 1974) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948)), and "there exists no fixed net worth which disqualifies a party as a pauper," *id.* Mr. Thomas's application indicates that he

is not employed at SCI-Fayette and has only five dollars in his prison account. Thus, he qualifies for *in forma pauperis* status.

## IV. Conclusion

For the reasons stated above, Magistrate Judge Blewitt's R&R will be adopted in part and rejected in part. Mr. Thomas's Eighth Amendment claims against the Defendant Wardens, Fifth Amendment claim, Fourteenth Amendment claim, medical malpractice claim, claim for monetary damages from Dr. Schaff in his official capacity, and claim for injunctive relief will all be dismissed. Mr. Thomas's motion for leave to proceed *in forma pauperis* will be granted. An appropriate order follows.

 March 29, 2012                                             /s/ A. Richard Caputo
Date                                                                A. Richard Caputo
                                                                         United States District Judge