IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL THOMAS, | : | CIVIL ACTION NO. **3:CV-11-2172** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN PALAKOVICH, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

I.    BACKGROUND

A.    FACTUAL BACKGROUND

On November 21, 2011, Plaintiff, Daryl Thomas, currently an inmate at the State

Correctional Institution, Fayette, LaBelle, Pennsylvania ("SCI-Fayette"), filed a civil rights action

pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff was formerly confined at the York County

Prison ("YCP") and at SCI-Camp Hill.[1]  Also, on November 21, 2011, Plaintiff filed a Motion for

---

[1]Plaintiff states that he was confined in YCP on March 30, 2009, and that he was then
transferred from YCP to SCI-Camp Hill Intake Center on  April 16, 2009.  (Doc. 1, pp. 2-3).
Plaintiff also states that on May 13, 2009, he was transferred back to YCP because the PA DOC
at SCI-Camp Hill did not want to treat his medical condition.  (*Id.*, p. 4).  On August 25, 2009,
Plaintiff states that he was again transferred back to  SCI-Camp Hill Reception Center.  (*Id.*, p.
7).  The Records Department at SCI-Fayette indicates that Plaintiff was transferred from SCI-
Camp Hill to SCI-Fayette on November 3, 2009.
    In his Complaint, on pages 6 and 8 Plaintiff incorrectly states that he was confined in
YCP on "March 30, 2008," and on page 7 he incorrectly states that he was transferred from YCP
to SCI-Camp Hill Intake Center on "April 16, 2008."  (Doc. 1, pp. 6-7).  The remaining pages of
Plaintiff's Complaint, along with his exhibits, clearly show that the correct stated dates were in
the year 2009, and not 2008.  In any event, since Plaintiff's claims accrued from March 30,
2009 through August 25, 2009, we find that they are time barred.  Also, Plaintiff appears to
admit in his Complaint that he did not fully exhaust his present claims *via* the grievance
procedures available at YCP and SCI-Camp Hill.

Leave to Proceed *in forma pauperis*.  (Doc. 2).

This Court has jurisdiction over Plaintiff's civil rights action is pursuant to 28 U.S.C. §1331 and §1343.  Plaintiff requested the Court to exercise its pendent jurisdiction over his state law claims pursuant to 28 U.S.C. §1367.[2]  Plaintiff names the following five (5) Defendants in his Complaint: John Palakovich, Superintendent at SCI-Camp Hill; Mary Sabol, Warded at YCP; Dr. Vonkiel; Counselor Meghann C. Centeno; and Dr. Nicholas Schaff, Chief of Clinical Service.

Plaintiff stated that he was confined in YCP on March 30, 2009, and that he was then transferred from YCP to SCI-Camp Hill Intake Center on April 16, 2009.  (Doc. 1, pp. 2-3).  Plaintiff also stated that on May 13, 2009, he was transferred back to YCP because the PA DOC at SCI-Camp Hill did not want to treat his medical condition.  (*Id.*, p. 4).  On August 25, 2009, Plaintiff stated that he was again transferred back to SCI-Camp Hill Reception Center.  (*Id.*, p. 7).  The SCI-Fayette Records Department indicates that Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette on November 3, 2009.  Plaintiff is presently confined at SCI-Fayette.

---

[2]To the extent Plaintiff raises professional medical malpractice claims under Pennsylvania law against the medical staff at YCP and SCI-Camp Hill, as discussed below, they are subject to dismissal due to Plaintiff's failure to timely file a Certificate of Merit ("COM") under Pa.R.Civ.P. 1042.7.

Plaintiff averred that he had a serious medical condition called "Bechets Syndrome."[3]

Plaintiff basically alleged that during his above stated periods of confinement in YCP and SCI-

Camp Hill in 2009, prison medical staff at both prisons failed to provide him with proper

medical care for his condition in violation of the Eighth Amendment.  Plaintiff also alleged that

medical staff at both prisons were negligent under Pennsylvania law.  Plaintiff alleged that upon

his arrival at YCP on March 30, 2009, he provided medical staff with medical records and

information about his Behcet's Syndrome condition, and that medical staff, including the prison

doctor, told him they never heard of it.  Plaintiff stated that on April 1, 2009, he saw a physician

aide at YCP, he provided medical information on Behcet's Syndrome, and that the medical

treatment was not available, aside from Prednisone, which was not a safe option according to

Plaintiff's Complaint. .  (Doc. 1, p. 2).  Plaintiff further averred that he was seen by the medical

staff at YCP on April 6, 8, 10 and 13, 2009, but that they failed to contact his outside treating

---

[3]Plaintiff refers to his ailment as "Bechets Syndrome."  Our search of WebMD, www.webmd.com, reveals that the correct spelling is "Behcet's" Syndrome.  We shall use the correct spelling of the syndrome hereafter.

According to WebMD, Behcet's Syndrome is:

> A rare multisystem inflammatory disorder characterized by ulcers affecting the mouth and genitals, various skin lesions, and abnormalities affecting the eyes. Symptoms include areas of abnormal mucous membrane changes (lesions) of the mouth and genitals that tend to disappear and recur spontaneously. Inflammation of the eyes (anterior uveitis, posterior uveitis, or panuveitis) also affects individuals with Behcet's syndrome. Additional systems of the body may also be affected including the joints, blood vessels, central nervous system, and/or digestive tract. The exact cause of Behcet's syndrome is unknown.

doctor about his condition and that they failed to review his medical records from his outside doctor.  On April 10, 2009, Plaintiff was seen by the YCP doctor, who allegedly told him that other than prescribing Prednisone there was not much that could be done to treat him.  (Doc. 1, p. 3).  Plaintiff averred that when he had a fever and his ulcer got worse on April 13, 2009, he was seen by the prison nurse who gave him ibuprofen and Benadryl.

On April 16, 2009, Plaintiff was transferred from YCP to SCI-Camp Hill.  Plaintiff advised the medical staff at SCI-Camp Hill about his condition, and gave them records and information about Behcet's Syndrome.  Plaintiff alleged that the prison dentist treated him on April 17 and 18, 2009, for oral ulcers, and that the cortisone ordered did not work.  Plaintiff stated that he also complained about hearing loss and vision problems in both eyes, but nothing was done by SCI-Camp Hill medical staff. (*Id*.).

Plaintiff stated he was again treated by SCI-Camp Hill medical staff on April 22 and 23, 2009, and that he was denied proper medical care since none of the medications and treatment provided to him worked.  Plaintiff also stated that even though he was not able to eat solid food, he was not placed on a liquid diet.  According to Plaintiff, on April 23, 2009, he passed out, was taken to the infirmary, where he was prescribed twenty (20) mg of Prednisone for thirty (30) days, and Vicoden for pain even though he was never on Prednisone for this long.  (*Id*., p. 4).

On May 13, 2009, Plaintiff was transferred back to YCP since he states that SCI-Camp Hill did not want to treat him.  Plaintiff notified the admission medical staff at YCP about his serious and terminal condition because he was having a flare up.  (*Id*.).  Plaintiff was seen by a YCP nurse on May 25, 2009, for swelling and a rash.  Plaintiff was prescribed hydrocortisone

cream for his rash.  According to Plaintiff, nothing was given to him for his ulcers and his pain. Plaintiff stated that he gave the YCP medical staff information about how to treat his serious condition, and that they were negligent in failing to treat him properly in accordance with the information he gave them.

Plaintiff was again treated on June 4, 2009 by the YCP nurse for open wounds, was prescribed betamethsone, and claims that the nurse failed to examine him for his other symptoms such as hearing and vision loss and his ulcer.  (*Id.*, p. 4).  Plaintiff also stated that YCP only wanted to give him Prednisone for his Behcet's Syndrome even though "it pose[d] a great risk to continue to prescribe it."  (Doc. 1, p. 4).

According to Plaintiff, when he was transferred back to SCI-Camp Hill on August 25, 2009, he again got sick due to the lack of medical care, despite the fact that Defendant Dr. Scharff was aware of his condition from his prior confinement in this prison.  (*Id.*, p. 7).

Plaintiff summarizes his claims as follows:

> The York County Medical Department along with the Pennsylvania Department of Correction Reception Center Camp Hill refusal to perform Rheumatology Clinical visit and blood work monitoring, along with starting plaintiff on the drug Azathioprine, with follow up visits to Rheumatology every one (1)-to-three (3) months.  Without these (sic) treatment to evaluate plaintiff Becket's (sic) Disease symptom which is causing the plaintiff pain and suffering, each day that goes by the plaintiff's pain and, suffering has gotten worse, because of the negligent (sic) of both the York County Prison Medical Department, and the Pennsylvania Department of Correction[s] Reception Center at Camp Hill refusal to treat plaintiff serious medical condition.

(*Id.*, ¶ 31).

Plaintiff raises Eighth Amendment denial of proper medical care claims against staff at both YCP and SCI-Camp Hill, due process claims under the Fifth and Fourteenth Amendments,

and state negligence and malpractice claims.[4]

In his First Cause of Action, Plaintiff alleged that Defendant Warden Palakovich violated his Eighth Amendment rights by failing to "curb the know[n] pattern of medical denial by the [SCI-] Camp Hill medical staff." (Doc. 1, ,p. 7). According to Plaintiff, his transfers to SCI-Camp Hill, on April 16, 2009 and August 25, 2009 are evidence of direct involvement of Defendant Palakovich with respect to his Eighth Amendment claims.

In his Second Cause of Action, Plaintiff alleged that Defendant YCP Warden Sabol violated his Eighth Amendment rights by failing to "curb the know[n] pattern of the York County medical staffs personnel" stating that Defendant Sabol was aware of his serious medical conditions due to letters he sent to her in April 2009. (*Id*., p. 8).

In his Third Cause of Action, Plaintiff claimed that Defendant Dr. Vonkiel violated his Eighth Amendment rights by refusing to provided him with proper medical care for his Behcet's Disease even though this Defendant knew of his disease before he treated Plaintiff on April 10, 2009, due to the fact that all of his records from his outside treating doctor were sent to YCP medical department on March 30, 2009. (*Id*., p. 8).

---

[4]To the extent that Plaintiff is raising claims under Fifth Amendment against the state actor Defendants, we will recommended that these claims against Defendants be dismissed with prejudice. *See Leventry v. Watts,* 2007 WL 1469038, *2 (W.D. Pa. 5-17-07). In *Leventry*, the Court stated that "the Fifth Amendment restricts the actions of federal officials, not state actors." Id.(citations omitted). As in *Leventry,* our Defendants are state actors. Thus, Plaintiff's claims against Defendants under the Fifth Amendment should be dismissed with prejudice. *Id*.; *Goins v. Beard*, 2011 WL 4345874, *8 (W.D. Pa. 9-15-11).

Based upon the above, we found that the Court should not allow Plaintiff to amend his Complaint against Defendants regarding his claims under Fifth Amendment, as it would be futile. *See Leventry*, *supra*.; *Goins, supra*.

In his Fourth Cause of Action, Plaintiff claimed that Defendant Counselor Centeno violated his due process rights under the Fifth Amendment and Fourteenth Amendment becaue she failed to fully investigate his DOC 801 administrative grievances and provide an adequate response.  (Doc. 1, p. 9).

In his final and Fifth Cause of Action, Plaintiff alleged that Defendant Dr. Schaff violated his Eighth Amendment rights by failing to properly treat him for his serious conditions.  Plaintiff stated that before his two transfers to SCI-Camp Hill, Defendant Dr. Schaff had copies of his medical records from his outside treating doctor (Dr. Khan) and his prescribed treatment, and that despite this actual knowledge Dr. Schaff refused and denied to treat him properly.  (*Id.*, p. 9).  Plaintiff also stated that Dr. Schaff did not order the required long term monitoring of his lab work for the medication Dr. Kahn prescribed, namely azathiloprine.

As relief, Plaintiff requested a declaratory judgment that Defendants Palakovich and Schaff violated his constitutional rights, as well as injunctive relief "ordering defendant John Palakovich, Warden of Camp Hill Reception Center and Mary Sabol, Warden of York County Prison, or their agent to immediately arrange for the plaintiff to begin the following treatment baseline law studies including CBC, sedimentation rate, C-reactive routine quantitative, LFTs." (*Id.*, p. 10).  Because Plaintiff is no longer at either YCP or SCI-Camp hill, we found that his request for injunctive relief seeking specific medical care at these two prisons is moot and should be dismissed.  *See Kelly v. Lebanon County Com'rs*, 2011 WL 4345065, *3-*4 (M.D. Pa. 8-23-11), adopted by 2011 WL 4344609 (M.D. Pa. 9-15-11)(citing, in part, *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).

7

Plaintiff also requested compensatory and punitive damages against Defendants, suing the state actor Defendants in both their official and individual capacities. (Doc. 1, p. 7-10). Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[5]

### B.    PROCEDURAL BACKGROUND

We screened Plaintiff's Complaint, and on February 7, 2012, we issued a Report and Recommendation, recommending that Plaintiff's *in forma pauperis* motion be granted for purposes of filing this action, and that the Complaint be dismissed with prejudice. (Doc. 9). More specifically, we recommended that this action be dismissed with prejudice because: (1) the two-year statute of limitations in which he was to raise his negligence and section 1983 claims had passed; and (2) Plaintiff had not fully exhausted all of his YCP and DOC administrative remedies before filing his action. In regards to Plaintiff's fourth cause of action discussed above, we recommended that this claim be dismissed with prejudice because Plaintiff as an inmate does not have a constitutional right to a grievance system and also failed to allege personal involvement of Defendant Centeno. In regards to Plaintiff's Eight

_____

[5]As stated, Plaintiff indicates that he seeks money damages from each named Defendant in both their individual and official capacities. To the extent that he seeks monetary damages from the Defendants, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, we will recommend that all of Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice. We find futility in allowing Plaintiff to amend his claims for monetary damages against Defendants in their official capacities. If a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

Amendment denial of proper medical claims, we recommended that with respect to Defendants Palakovich and Sabol, these claims be dismissed with prejudice because Plaintiff failed to assert personal involvement of Defendants Palakovich and Sabol (required by section 1983 and *Iqbal*) because the doctrine of repondeat superior does not apply to constitutional claims.  With regards to Plaintiff's Eighth Amendment claim against Defendants Dr. Vonkiel and Dr. Schaff, we recommended that while Plaintiff alleged personal involvement and deliberate indifference to Plaintiff's condition on the part of both Defendants, these claims should still be dismissed with prejudice because they were time-barred, and Plaintiff failed to exhaust his administrative remedies. In regards to Plaintiff's Fifth Amendment procedural due process claim, because he did not allege any actions on the part of the federal government, but rather only the state government, we dismissed this claim with prejudice.  In regards to Plaintiff's Fourteenth Amendment claim against Defendant Centeno that he failed to properly investigate and respond to his administrative grievances, we recommended that this claim be dismissed with prejudice because there is no constitutionally-protected right to grievance procedures. Lastly, in regards to Plaintiff's state negligence claims, because Plaintiff failed to file a Certificate of Merit in accordance with Rule 1042.3(a) within sixty (60) days of filing his Complaint, we recommended that this claim be dismissed with prejudice.

On March 30, 2012, the Court issued a Memorandum and Order adopting and rejecting our Report and Recommendation in part, stating:

> (1) Plaintiff's Motion for Leave to Proceed *in forma pauperis* is GRANTED;
> (2) The following claims in Plaintiff's Complaint are DISMISSED: (a) Plaintiff's Eighth Amendment claims against Warden Palakovich and Warden Sabol; (b) Plaintiff's Fifth and Fourteenth Amendment claim; (c) Plaintiff's medical

malpractice claim; (d) Plaintiff's claim for monetary damages from Dr. Nicholas Schaff in his official capacity; and (e) Plaintiff's claim for injunctive relief.

(3) Plaintiff will have twenty-one (21) days to amend his Eighth Amendment claims against Defendants Dr. Schaff and Dr. Vokiel.  When submitting an amended complaint, Plaintiffs must follow the procedure for highlighting of amendments outlined in Local Rule 15.1(b).

(Doc. 14, p. 1-2).

## II.     STANDARDS OF REVIEW

### A.     28 U.S.C. § 1915(e)(2)(B)

This statute states that a court shall dismiss a claim if it determines that the claim: "(I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

### B.     FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2)

This rule requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" which "give[s] the defendant fair notice of what the . . .  claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1959 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, "[a] party must state its claims ...  in numbered paragraphs, each limited to a single set of circumstances" and, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . .  must be stated in a separate count . . . " Fed.R.Civ.P. 10(b).

### C.     FEDERAL RULE OF CIVIL PROCEDURE 41(b)

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to *prosecute* or comply with these rules or *order of court* . . ." Fed.R.Civ.P. 41(b) (emphasis added).

10

### III.   DISCUSSION

Pursuant to 28 U.S.C. § 1915(e)(2)(B), in proceedings *in forma pauperis*, a court shall dismiss a claim if it determines that the claim "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  *See Nelson v. Dauphin County* Prison, 2009 WL 4269087 (M.D. Pa.).  *Pro se* litigants, such as Plaintiff, are accorded substantial deference in federal court.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *Hughes v. Rowe*, 449 U.S. 5 (1980).  They are not, however, free to ignore the Federal Rules of Civil Procedure.

Federal Rules of Civil Procedure 8(a)(2) requires that, in order to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1959 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, "[a] party must state its claims ... in numbered paragraphs, each limited to a single set of circumstances" and, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . .  must be stated in a separate count . . . " Fed.R.Civ.P. 10(b).

Plaintiff's original Complaint did not meet the requirements of the Federal Rules of Civil Procedure as detailed in our Report and Recommendation filed on February 7, 2012 and detailed also in the Court's Memorandum and Order issued on March 30, 2012.   As stated, Plaintiff was afforded twenty-one (21) days from the date of the March 30, 2012 Order to amend his Eight Amendment claims against Defendants Dr. Schaff and Dr. Vokiel. (Doc. 14).

11

However, Plaintiff failed to file an Amendment Complaint, and, thus, failed to state a claim in conformance with Federal Rule of Civil Procedure 8(a) (2) and 10(b).

Furthermore, Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to *prosecute* or comply with these rules or *order of court* . . ." Fed.R.Civ.P. 41(b) (emphasis added).  In the instant case, Plaintiff has failed to both prosecute his action and to comply with the Orders of this Court by his failure to file his Amended Complaint.  Plaintiff has taken no action with respect to his case.

The behavior of Plaintiff constitutes a willful failure to prosecute his case, as opposed to a situation in which he has had problems in pursuing his case, but made efforts to comply with this Court's March 30, 2012 Order directing Plaintiff to file an amended complaint by April 20, 2012.  We find that Plaintiff's "behavior has been so egregious as to make self-evident the factual findings and analysis [of the *Poulis* factors]."  *Williams v. Kort*, 223 Fed. Appx. 95, 103 (3d Cir. 2007).

Therefore, we recommend that this case be dismissed due to Plaintiff's failure to prosecute it and due to his failure to comply with this Court's Orders.  Plaintiff should be deemed as abandoning his action.  *See McCray v. Dauphin Co. Prison*, 2007 WL 431886 (M.D. Pa); *Nelson v. Berbanier*, 2006 WL 2853968 (M.D. Pa.).

Because we find that Plaintiff's conduct clearly shows that he intended to abandon his case, we do not find that an analysis of the factors of *Poulis v. State Farm Fire & Cas. Co.*, 747 F.3d 863, 868 (3d Cir. 1984) is required before recommending that this case be dismissed with prejudice under Rule 41(b).  *See Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994); *Guyer*

12

*v. Beard*, 907 F. 2d 1424 (3d Cir. 1990)(the district court's requirement to perform an analysis under *Poulis* is obviated where Plaintiff's conduct is so egregious as to demonstrate an abandonment of his case).

In *Jackson v. Johnson*, 2006 WL 2136218, *1 (M.D. Pa.), the Court stated that "Fed. R. Civ. P. 41(b) allows for the dismissal of an action where the Plaintiff fails to prosecute or fails to comply with rules or orders of the court."

The *Jackson* Court also stated:

> [T]he factors set forth in *Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir.1984) [are analyzed] to determine whether dismissal of the action is appropriate in this case. The *Poulis* factors the Court should consider are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis,* 747 F.2d at 868.

> We agree with the Magistrate Judge's determination that the Plaintiff's dilatoriness outweighs any of the other considerations set forth in *Poulis,* and that Plaintiff's failure to comply with the Order of May 30, 2006 indicates that the Plaintiff has abandoned this lawsuit. His inaction points to no other logical conclusion.

*Id*.

Thus, out of an abundance of caution, we also analyze the *Poulis* factors. We find that Plaintiff's stated conduct in delaying his case is attributed to him personally. We gave Plaintiff an additional twenty-one (21) days from the date of our March 30, 2012 Order to file his Amended Complaint. Plaintiff was required to have filed his Amended Complaint by April 20, 2012. Plaintiff has not filed any type of pleading in almost three (3) months, and he has given

no indication that he intends to pursue his action.

We find that Plaintiff has caused prejudice to Defendants since they have been named in a federal lawsuit, and no action, including service of a proper pleading, has been made on them to date.  While Plaintiff does not yet have a significant history of dilatoriness in this case, his present conduct in failing to prosecute his November 21, 2011 case is nonetheless evidence of dilatoriness, especially because this case cannot proceed without his compliance with the Court's March 30, 2012 Order.

Based on our discussion above, we find that the conduct of Plaintiff is willful, especially because he has filed nothing with the Court in almost three (3) months, he has failed to respond to the Court's March 30, 2012 Order to file an amended complaint by April 20, 2012, and he has not contacted the Court to explain why he has failed to comply with the Order nor has he requested an extension of time.

Plaintiff was well aware of the consequences of his failure to comply with the Court's March 30, 2012 Order, and thus, we shall now recommend that his case be dismissed with prejudice.  As stated, this case cannot proceed without Plaintiff's compliance with the March 30, 2012 Order.  Because we shall recommend that Plaintiff's case be dismissed with prejudice and because Plaintiff is seeking to proceed *in forma pauperis*, we find that other sanctions would not be effective in this case.

Thus, we find that the *Poulis* factors weigh in favor of dismissing this case with prejudice, and that Plaintiff's failure to comply with the Court's March 30, 2012 Order demonstrates he has abandoned his case.

**IV.      RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that this case be dismissed with prejudice on the basis of Plaintiff's failure to comply with the Court's March 23, 2012 Order and on the basis of his failure to prosecute his action under Federal Rule of Civil Procedure 41(b).




**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:   June 4, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL THOMAS, | : | CIVIL ACTION NO. **3:CV-11-2172** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN PALAKOVICH, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 4, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                                 **s/ Thomas M. Blewitt**
_____    **THOMAS M. BLEWITT**
                                               **United States Magistrate Judge**


**Dated: June 4, 2012**